FILED
2013 Jun-03  AM 10:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| SANDRA K. PATTERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 2:12-cv-1943-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.   Introduction

The plaintiff, Sandra K. Patterson, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Mrs. Patterson timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Mrs. Patterson was fifty-five years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 46.) She is a high school graduate and has attended one year of business college. (*Id*.) Her past work experiences include

employment as a secretary and administrative assistant. (*Id.*) Mrs. Patterson claims that she became disabled on August 2, 2005, due to degenerative disc disease and fibromyalgia. (Tr. at 46.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id.* If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id*.  If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. §§ 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops.  *Id*.  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id*. Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.  20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v).  If the claimant can do other work, the claimant is not disabled.  *Id*.

Applying the sequential evaluation process, the ALJ found that Mrs. Patterson meets the nondisability requirements for a period of disability and DIB and was insured through the date of his decision.  (Tr. at 28-29.) He further determined that Mrs. Patterson has not engaged in substantial gainful activity since the alleged onset of her disability.  (Tr. at 29.) The ALJ found that Mrs. Patterson has the severe

impairments of fibromyalgia and degenerative disc disease. (*Id.*)  However, according to the ALJ, Plaintiff's degenerative disc disease and fibromyalgia are not considered to be impairments or combinations of impairments that meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 26.)  The ALJ did not find Mrs. Patterson's allegations to be fully credible, and he determined that she retains the following residual functional capacity: sedentary work which allows occasional bending or stooping in a temperature controlled environment with no upper extremity pushing or pulling movements.  (Tr. at 28.)

Mrs. Patterson is considered a person of "advanced age," as defined by the regulations. (*Id.*) The ALJ found that Mrs. Patterson is capable of performing any of her past relevant work as a secretary and administrative assistant and that she has the residual functional capacity to perform a range of sedentary work. (*Id.*) Even though Plaintiff cannot perform the full range of sedentary work, the ALJ noted that under Social Security Ruling 82-61, an individual will be found not disabled "when it is determined that he or she retains the residual functional capacity to perform the actual functional demands and job duties of the occupation as generally required by employers throughout the national economy." (*Id.*)  After soliciting testimony from a vocational expert, the ALJ found Mrs. Patterson could meet the functional demands

of her past work. The ALJ concluded his findings by stating that Plaintiff "was not under a 'disability,' as defined in the Social Security Act, from August 2, 2005 through the date of this decision." (*Id*.)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id*.  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"  *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607,

620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

Mrs. Patterson contends that the ALJ's decision should be reversed and remanded because the ALJ failed to properly evaluate the credibility of her testimony of disabling symptoms in accordance with the Eleventh Circuit's "pain standard." (Doc. 8 at 4.)

Disability benefits may not be paid solely on the basis of a claimant's own self-serving complaints. See: 42 U.S.C §§ 423 (d)(5)(A), 1382c (a)(3)(H)(I) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require An individual's statement as to pain and other symptoms shall

not alone be conclusive evidence of disability.") However, subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, the Eleventh Circuit has set forth a three-part standard: "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ may discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so based on substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.") Although the Eleventh Circuit does not require explicit

findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

In this case, the ALJ did not find Mrs. Patterson's statements "fully credible in light of medical history, reports from treating and examining practitioners, and the objective clinical findings on examination." (Tr. at 26.) The ALJ did find that Plaintiff had the "severe" impairments of fibromyalgia and degenerative disc disease (*id*.) but that she did not have an impairment or combination of impairments that meets or equals one of the listed impairments as required by 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that "[t]he evidence as a whole fails to confirm disabling limitations arising from the claimant's impairments, and her impairments have not been of such severity that they could reasonably be expected to give rise to disabling limitations." (Tr. at 29.)

In determining whether Mrs. Patterson had the residual functional capacity to perform her past relevant work, despite her impairments, the ALJ considered her

subjective complaints. Specifically, the ALJ found that the documentary evidence established underlying medical conditions capable of producing some pain and other limitations, but that substantial evidence did not support a conclusion that the objectively determined medical conditions were of such severity that they could reasonably be expected to give rise to disabling pain and the other limitations alleged by Mrs. Patterson. (Tr. at 28.) The ALJ noted that while Mrs. Patterson alleges that fibromyalgia and degenerative disc disorder are principally what kept Plaintiff from working, the documentary evidence fails to confirm such disabling limitations. (Tr. at 29.)

The ALJ's conclusions are supported by the record. Plaintiff alleges that her disability began in August 2005, but she admittedly did not seek treatment for fibromyalgia until she saw Dr. Shepherd in January 2010. (Tr. at 508.) Even then, Dr. Shepherd's assessment of Plaintiff's alleged symptoms was only "probable fibromyalgia," and any mention of physical limitations resulting from the fibromyalgia are absent from his medical record. (*Id.*) During the same visit, Dr. Shepherd performed a routine physical examination of Mrs. Patterson, noting that she was within normal limits, her lower back pain was "much improved," and she had a "normal gait." (*Id.*) In May 2010, Plaintiff was examined by Dr. Watterson, who

noted that a "lumbar MRI demonstrated only small disc bulges at the L1-L4 levels and a small disc bulge at the L5/S1 level, which appeared to be insignificant." (Tr. at 28, 537.) Mrs. Patterson denied any sensory deficits, motor weaknesses, and any bladder or bowel dysfunction. (*Id.*) These unremarkable visits do not corroborate Plaintiff's subjective claims of disabling pain.

It would be significant if the Plaintiff could definitively establish that she has fibromyalgia because   "[f]ibromyalgia, if properly diagnosed, satisfies the pain standard." *Bennet v. Barnhart*, 288 F. Supp. 2d 1246, 1249 (N.D. Ala. 2003). The presence of fibromyalgia can be objectively verified by the presence of "tender areas," or "trigger points," which are well defined and cause pain upon palpation. *Id.* Clinical support for a diagnosis of fibromyalgia may be present if "injections of pain medication to the trigger points are prescribed." *Id.*  Although Mrs. Patterson alleges pain at these points, it does not appear from the record that any formal tender point testing or treatment was ever performed. The ALJ noted that the American College of Rheumatology (ACR) has determined that a diagnosis of fibromyalgia must be supported by widespread pain in all four quadrants of the body for a minimum of three months and positive results in at least 11 of 18 specified tender points. (Tr. at 27.) There is no evidence in the record that these tests were ever performed or that there

was a reason to perform them.

Mrs. Patterson's testimony indicated that her back pain was getting progressively worse, to the point that it caused her to scream involuntarily. (Tr. at 8.) However, the ALJ noted that such symptoms and levels of pain do not appear in any of the clinical notes taken by her doctors and that Dr. Watterson cited a 70-80% decrease in back pain from regular epidural blocks. (Tr. at 27, 537.) Plaintiff contends that the ALJ overstated the relief from the epidurals, incorrectly implying that the relief was longstanding when, in fact, it only lasted for two to three weeks at a time. (Doc. 8 at 6.) However, the ALJ also observed that Plaintiff's pain was managed with Mobic and Ibuprofen, which are mild analgesics, rather than narcotics that might be indicative of severe disabling pain. (Tr. at 27.) This finding supports the ALJ's decision to afford little credibility to Plaintiff's subjective complaints.

Plaintiff also contends that her pain causes her to lie in bed for several hours a day. (Tr. at 27, 48, 50.) However, as the ALJ stated, she has not reported this symptom to any physician nor does it appear in the clinical notes in the record. The ALJ additionally pointed out that lying down does not appear to be a prescribed treatment or therapy for Mrs. Patterson's conditions. (Tr. at 27.) Plaintiff alleges that the ALJ is attempting to "play doctor" in making the above determination because the

longitudinal history of Mrs. Patterson's complaints of pain and continued treatment

for the same symptoms demonstrate her attempts to follow the treatment once it is

prescribed. (Doc. 8 at 7.) She contends that this history should lend support to her

allegations of intense or persistent pain or other symptoms for the purposes of judging

the credibility of her statements. (*Id.*) The ALJ, however, found that not only was

lying down not a prescribed treatment for Mrs. Patterson's symptoms, but that

exercise was actually recommended. (Tr. at 27, 277, 367, 471, 476, 479, 508, 509, 515.)

He concluded from that evidence that Plaintiff is not only capable of performing

exercises but also that her treating physicians believed it would be therapeutic. (Tr.

at 27.)

Finally, Plaintiff contends that medical evidence dating back to 2004 supports

her testimony that she is unable to complete an eight hour work day at any exertional

level because of chronic moderately severe back and lower body pain. Such evidence

includes total knee replacements in her right knee and multiple injections. (Doc. 8 at

7.) While her joint pain was described at one time as "uncontrolled," (tr. at 410, 412),

the ALJ pointed out that the results from her current physical examinations

undermined her allegations of disabling pain. (Tr. at 27, 508-13, 537.) The recent

physical examinations yielded results that were either good or unremarkable, with

doctors noting that her straight leg tests were negative and that she maintained full motor strength in all major muscle groups. (Tr. at 27, 325, 450-1, 458, 471, 476, 478, 493, 539.) The ALJ pointed to the fact that none of Mrs. Patterson's treating physicians specifically found her to be so limited as to call her "disabled," (tr. at 28) and that Dr. Nortick, who performed a consultative physical evaluation, believed that Mrs. Patterson could frequently sit and stand for up to six hours. (Tr. at 28, 456.) Finally, when asked to consider Mrs. Patterson's age, education, work experience, and assigned RFC, Mr. Parsons, the vocational expert, testified that Plaintiff could return to her past relevant work or pursue work as a ticket taker, medical transcriptionist, or an appointment clerk. (Tr. at 31-33.)

The ALJ specifically addressed Plaintiff's allegations of pain in his opinion, and he provided explicit and reasonable reasons for rejecting her testimony. The reasons articulated are not a "broad rejection" and do not indicate that the ALJ failed to consider Plaintiff's medical condition as a whole. The objective medical and other evidence supports the ALJ's conclusion that Plaintiff's condition did not cause disabling limitations, and instead shows that she could perform a reduced range of sedentary work. (Tr. at 28.) The ALJ's determination that Plaintiff's testimony of her disabling pain was not credible is supported by substantial evidence. This court will

not substitute its judgment for that of the ALJ's when, as here, it is supported by substantial evidence.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Mrs. Patterson's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law.  A separate order will be entered.

Done this <u>3rd</u> day of <u>June 2013</u>.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
[170956]